

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KATHLEEN KERWIN and JOHN KERWIN,

    Plaintiffs,

v.

REMITTANCE ASSISTANCE CORP.,

    Defendant.

03:07-CV-00036-LRH-VPC

ORDER

    Before the court is Remittance Assistance Corporation's ("RAC") Motion to Dismiss or, Alternatively, Motion for Summary Judgment (#9[1]). Plaintiffs Kathleen Kerwin and John Kerwin (collectively, "Kerwins") have filed an opposition (#11) and RAC replied (#12).

I.    **Facts**

    This is an action filed pro se against RAC, a collection agency, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a–1692p. RAC responded to the Kerwins's complaint with a motion to dismiss pursuant to Federal Rules of Civil Procedure 41(b) and 16(f) and, in the alternative, a motion for summary judgment.

    Viewing the facts stated in the Kerwins' complaint[2] and the evidence offered by RAC in the

---

[1] Refers to the court's docket number.

[2] The Kerwins' complaint is verified. Therefore, its contents may be considered in opposition to RAC's motion for summary judgment to the extent they are specific and based on personal knowledge.

light most favorable to the Kerwins, the following narrative describes the facts of this case:

RAC contracts with Renown Health and affiliated entities to collect debts owed for medical services. (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. B at ¶ 2.) Via "computer tape" or "paper assignment" the Renown Health entities supply RAC with accounts requiring collection. (*Id.* at ¶ 3.) RAC employees then manually input select accounts into computerized "Work Lists," which are used to make automated phone calls to the numbers associated with the accounts. (*Id.* at ¶¶ 4–5.) If the auto-dialer detects an answering device (for example, an answering machine or voicemail), it leaves the following message:

> Hello, this message is for (name). This is not a sales call. You have an important matter with our company that deserves your immediate attention. Please call me back as soon as possible at the following number: 877-789-7878. Again, the number is 877-789-7878. When returning this call, please refer to reference number (number). Again, the reference number is (number). If you wish to speak to someone now regarding your account, press zero. Thank you and goodbye.

(*Id.* at ¶¶ 5–6.) If the recipient does not return the call, the number is called at a later time. (*Id.* at ¶ 6.)

On October 31, 2006, the auto-dialer called the Kerwins' residential phone number, leaving the automated message for "Sharron Coldwell."[3] (*Id.* at ¶ 8.) RAC did not receive a return call, and RAC left a similar message on November 8, 2006 at 12:44 p.m. Kathleen Kerwin returned this call and spoke to RAC employee Amber Wells. After informing Ms. Wells that the Kerwins owned the phone number 775-746-3017 since June 2005 and that "Sharon and Greg Caldwell" had owned the number before the Kerwins, Ms. Kerwin stated that she would sue RAC if she received any further calls. (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. C at ¶¶ 2–3.) Ms. Wells responded, "[G]o ahead and sue." (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. D.) Ms. Wells removed the Kerwins' phone number from the account associated with "Sharron Coldwell." (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. C at ¶ 4.)

---

[3]"Sharron" is distinct from "Sharon."

2

On November 13, 2006, the auto-dialer again called the Kerwins' phone number, leaving the automated message for "Greg Coldwell." (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. B at ¶ 13.) On November 14, 2006, RAC received a certified letter from the Kerwins stating that Sharon and Greg Caldwell could not be reached at the Kerwins' number. (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. D.) In addition, the Kerwins demanded that RAC "[c]ease and desist calling [their] number," told RAC that they found the calls "annoying" and "abusive" and told RAC further calls would result in a lawsuit under the FDCPA. (*Id.*) In response to the letter, RAC removed the Kerwins' phone number from the "Greg Coldwell" account. (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. B at ¶ 4.)

On January 3, 2007, the auto-dialer called the Kerwins' phone number, leaving the automated message for "Greg Colwell." (*Id.* at ¶ 16.) Ms. Kerwin called RAC later that day, informing a RAC supervisor, Jason Lockwood, that she considered the call "harassment." (*Id.* at ¶ 17.) Mr. Lockwood removed the Kerwins' phone number from the "Greg Colwell" account. (*Id.*)

RAC acknowledges that the Kerwins do not owe any money to any of RAC's creditor-clients. (*Id.* at ¶ 21.) RAC further states that, since the automated dialing software could not sort by phone number, RAC could not remove the Kerwins' phone number from their system except in an account-by-account fashion. (*Id.* at ¶ 19.) The removal of the number from one account did not affect other, similar accounts. (*Id.*) Therefore, according to RAC, it was possible that the Kerwins could receive calls for other variations of "Sharon Caldwell" or "Greg Caldwell" as long as these variations were separate RAC accounts. (*Id.*)

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

### B. Discussion

#### 1. Admissibility of the Kerwins' Complaint to Oppose Summary Judgment

As a threshold matter, RAC argues that the Kerwins have submitted no evidence in opposition to its motion for summary judgment. RAC's argument, however, fails to acknowledge that the Kerwins have filed a verified complaint. "A verified complaint may serve as an affidavit for purposes of summary judgment if (1) it is based on personal knowledge and if (2) it sets forth the requisite facts with specificity." *California Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1176 (9th Cir. 2007). Where the complainant does not provide sworn verification of the complaint, the complaint may still be verified if the complainant declares, under penalty of perjury, that the complaint is "true and correct." 28 U.S.C. § 1746.

The Kerwins' complaint is in such a form that it meets the requirements of a verified complaint. First, the complaint satisfies the requirements outlined in *California Pro-Life Council*; that is, the complaint is based on personal knowledge and sets forth facts with specificity. Second, the Kerwins' complaint concludes with the following coda: "The undersigned affiant, Kathleen Kerwin, says: I am over the age of eighteen, suffer no legal disabilities, have personal knowledge of the facts set forth below, and am competent to testify." (Compl. (#1).) This coda is followed by Mrs. Kerwin's signature. Though this coda does not swear, under penalty of perjury, to the truth of the facts set forth in the complaint, it substantially complies with § 1746's requirements. The coda incorporates traditional legal language that a nonlegally trained litigant might take to satisfy legal requirements. Furthermore, the phrases "personal knowledge of the facts" and "testify" presuppose the truth of the facts because it is logically impossible to know a "false fact." *See Black's Law Dictionary* 628 (8th ed. 2004) (defining "fact" as "something that actually exists; an aspect of reality"). The absence of one element of the traditional legal boilerplate used to verify complaints was probably unintentional, and such a technical defect is not favored as grounds for granting summary judgment. For example, in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 376 (1966), the

Supreme Court considered a defect in verification committed by an unsophisticated litigant. In reversing the dismissal, the Court stated that "[The Federal Rules of Civil Procedure] were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court."

Moreover, even if the Kerwins' complaint were not verified, the court would nevertheless deny summary judgment because RAC's motion for summary judgment alone shows there is a genuine issue of material fact for trial. RAC's motion indicates that (1) RAC mistakenly called the Kerwins several times, (2) the Kerwins demanded the calls to cease, and (3) the calls did not cease. These acts raise a genuine issue as to whether RAC violated the FDCPA. *See* § 1692c(c) (If a consumer notifies a debt collector in writing that the consumer . . . wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer . . . ."). Furthermore, the court doubts the wisdom of terminating this action prior to a full trial, given the Kerwins' status as pro se litigants. Special circumstances that raise doubts as to the wisdom of terminating a case prior to trial, such as when a litigant is pro se, warrant a court's discretion to deny a motion for summary judgment. *Rand v. Rowland*, 113 F.3d 1520, 1523 (9th Cir. 1997). As the Eighth Circuit explained,

> A federal district court has no discretion to *grant* a motion for summary judgment under Rule 56. However, even if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to *deny* the motion and permit the case to be developed fully at trial. The ultimate legal rights of the movant can always be protected in the course of or even after trial.

*Olberding v. U.S. Dept. of Def.*, 546 F. Supp. 907, 908 (8th Cir. 1983); *see also Rand*, 113 F.3d at 1523 (approving the exercise of discretion to deny summary judgment when the plaintiff was a pro se prisoner litigant). The court's discretion to deny summary judgment against the Kerwins–elderly and legally unsophisticated pro se litigants–is therefore warranted. RAC's interests will be protected in the course of a trial or even afterwards.

## 2. FDCPA

### i. Standing

The FDCPA provides that "any debt collector who fails to comply with any provision of [the Act] with respect to any person is liable to such person . . . ." 15 U.S.C. § 1692k(a). Persons who do not owe money but are subject to improper practices by debt collectors are covered by the FDCPA. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (finding plaintiff had standing under FDCPA where a debt was erroneously attributed to him); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985) (noting that one of the purposes of the FDCPA is that every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner); *cf. Pittman v. J.J. Mac Intyre Co. of Nevada*, 969 F. Supp. 609, 613 (D. Nev. 1997) (finding a plaintiff had standing where collectors continued to mistakenly call her after she had paid her debt).

In light of evidence presented in support and in opposition to summary judgment, the court concludes the Kerwins have standing under the FDCPA. First, RAC concedes the Kerwins have standing to sue for debt collection abuses. (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), at 11). Furthermore, the FDCPA provides that any debt collector who fails to comply with the Act with respect to "any person" is liable to that person. 15 U.S.C. § 1692k(a). And § 1692d(5) provides that "any person at the called number" may recover for abusive conduct. This broad wording suggests that the Act may be applicable to nondebtor victims of the FDCPA's prohibited conduct. Moreover, as the *Baker* court noted, "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless or whether a valid debt exists." *Baker*, 677 F.2d at 777.

### ii. Prohibited Conduct

The FDCPA creates liability for "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. An

7

act's "natural consequences" are evaluated according to their likely effect on the least sophisticated consumer. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982) (adopting the least sophisticated consumer standard for determining the natural consequence of misleading statements). For example, in *Pittman*, this district found that calls to a plaintiff's workplace, after the plaintiff notified a collector not to call her at work, constituted conduct whose natural consequence is to harass. *Pittman*, 969 F. Supp. at 609.

Abusive conduct under § 1692d includes, but is not limited to, "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," 15 U.S.C. § 1692(d)(5). Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the substance of the phone calls, or the place to which phone calls are made. *See Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1452–53 (D. Nev. 1994) (finding intentional harassment when a collector immediately recalled a debtor after the debtor hung up); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96, 101 (D. Conn. 2005) (abusive language); *Pittman*, 969 F. Supp. at 612 (phone calls to place of work). A plaintiff carries the burden of proving that a defendant debt-collector placed abusive phone calls. *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or. 1981).

Within 15 U.S.C. § 1692c(c), the FDCPA also provides that once "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt" except in narrowly defined circumstances.[4] "Other than as permitted by § 1692c(c), a debt collector who has received a cease communications order from a debtor must not contact the debtor unless it has received a clear

---

[4] These circumstances include advising the consumer that the debt collector's further efforts are being terminated, notifying the consumer that the debt collector or creditor may invoke ordinary remedies, or notifying the consumer that the debt collector or creditor will invoke a specific remedy. 15 U.S.C. 1692c(c)(1)–(3).

8

1 waiver of that order." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006).

In the present case, a genuine issue exists as to whether RAC engaged in prohibited conduct toward the Kerwins. First, under § 1692d (which prohibits conduct the "natural consequence" of which is to harass), the Kerwins have been subject to conduct that, in a closely analogous case, constituted abuse. In *Pittman*, this district held that there had been "abuse" under § 1692d when a plaintiff notified a debt collector that there had been an error, the plaintiff requested that calls cease, and the calls did not cease. *Pittman*, 969 F. Supp. at 613.

Second, under §1692d(5), there is a genuine issue as to whether RAC's repeated phone calls constituted intentional abuse. As the Kerwins' complaint, (#1), and their registered letter, (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. D), attest, RAC employees told the Kerwins to "go ahead and sue" following the Kerwins' complaints and threats to sue. There is a genuine issue of fact as to whether "go ahead and sue" constitutes abusive language under the FDCPA. For example, in *Chiverton*, a debt collector's suggestion that the plaintiffs were "liars" and could not correctly manage their financial affairs constituted abusive language. *Chiverton*, 399 F. Supp. at 101. Similarly, "go ahead and sue," if uttered as a challenge to the Kerwins' ability to dispute the debt or to stop RAC's calls, may constitute abusive language under the FDCPA.

Third, there is an genuine issue as to whether RAC violated 15 U.S.C. § 1692c(c) by phoning the Kerwins after receiving written notice that the Kerwins wished RAC to cease further communication. The *Clark* court held that a debt collector who has received such a notice must cease communication unless the debtor waives his or her cease-communications order. *Clark*, 460 F.3d at 1171. Since RAC did not cease communication following the Kerwins' registered letter–and there is no indication the Kerwins waived their cease-communications order–a genuine issue remains as to whether RAC violated § 1692c(c) of the FDCPA.

### iii. Mistake

15 U.S.C. § 1692k(c) provides,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The bona fide error defense is an affirmative defense, and therefore the burden of proof for showing a bona fide error rests on a debt collector. *Clark*, 460 F.3d at 1177. "Clerical errors and misstatements . . . are the kinds of 'violations' of the Act for which section 1692k(c) was intended to provide a defense." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 389 (D. Del. 1991). Further, "if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors." *Clark*, 460 F.3d at 1177.

Here, there is a genuine issue as to whether RAC committed a "bona fide" error in continuing to contact the Kerwins. Section 1692k(c) requires debt collectors to maintain procedures reasonably adapted to avoid error, and RAC bears the burden of proof showing that it maintained such procedures. RAC has not shown as a matter of law that it has met this burden; rather, RAC claims that its mistake was bona fide because "the auto-dialer does not sort or filter calls by telephone number." (Defs.' Mot. to Dis. or, Alternatively, for Summ J. (#9), Ex. B ¶ 19.) The evidence only describes RAC's equipment and is not sufficient to show as a matter of law that its procedures are reasonable or its mistakes were merely clerical. In addition, since the input of accounts into a "Work List" is done manually, there is a genuine issue as to whether RAC's procedures reasonably ensured inclusion of only correct accounts. Furthermore, the facts presented with the present motion are similar to the facts in *Pittman*, where a debt collector's own account notations indicated a mistake, the debt collector knew that its creditor-client would not correct the mistake, and the debtor notified the debt collector of the mistake. *Pittman*, 969 F. Supp. at 613. The *Pittman* court found that these facts did not constitute a bona fide mistake defense under the

10

FDCPA. *Id.*

Furthermore, though reliance on information provided by creditors can excuse the debt collector from errors, *Clark*, 460 F.3d at 1177, the validity of this reliance depends on whether the creditor has provided accurate information in the past, *Beattie*, 754 F. Supp. at 392. Here, the undisputed evidence shows Renown and its affiliates supplied at least three inaccurate accounts for the same phone number. Reliance on a creditor's information will not excuse a debt collector's actions when the debt collector had reason to know that the creditor was unreliable. *See Pittman*, 969 F. Supp. at 613.

### III. Motion to Dismiss

RAC's motion to dismiss argues the Kerwins failed to prosecute and failed to follow court orders, including scheduling orders. This court's Scheduling Order set an August 15, 2007, deadline to conduct discovery pursuant to Local Rule 26-1(e) (#8). The Kerwins delivered a "subpoena request" to RAC on September 19, 2007. (Def.'s Rep. to Plaintiff's Opp. to Def.'s Mot. Summ. J. (#12), Attachment 1.) The "subpoena request" appears to be first action taken by the Kerwins since filing the original complaint on January 23, 2007. (*See* #1-12) (showing no contact with the court or RAC between January 23, 2007, and September 19, 2007). It is possible that Mr. Kerwin's illness may account for some of this delay. (*See* Compl. (#1), at 2) (stating that Mr. Kerwin suffers from skin cancer).

Federal Rule of Civil Procedure 41(b) provides that a defendant may move for dismissal of an action for "failure of the plaintiff to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Dismissal pursuant to Rule 41(b) is at the discretion of the trial court. *States S.S. Co. v. Philippine Air Lines*, 426 F.2d 803, 803 (9th Cir. 1970). "In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of

less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

Federal Rule of Civil Procedure 16(f) provides for "any just orders" if a party "fails to participate in good faith" in a pretrial conference or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Dismissal pursuant to Rule 16(f) is at the discretion of the trial court. *Sanders v. Union Pac. R.R. Co.*, 193 F.3d 1080, 1081 (9th Cir. 1999). Typically, dismissal is appropriate as a sanction under Rule 16(f) when a party has engaged in a pattern of disobedience or noncompliance with court orders. *See Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) (holding dismissal was not abuse of discretion when it was based on a party's failure to comply with a pretrial order after a previous mistrial due to the party's lack of preparation); *Thompson v. Housing Auth. of the City of Los Angeles*, 782 F.2d 829, 830 (9th Cir. 1986) (holding dismissal was not abuse of discretion where it was based on a party's failure to participate in a pretrial conference after three previous continuances due to the party's lack of preparation). *But see United States v. Dimitt*, 137 F.R.D. 677, 677 (D. Kan. 1991) (holding pro se defendant's failure to appear at a pretrial conference did not warrant the sanction of dismissal where there may have been grounds for reasonable mistake).

Dismissal is so harsh a penalty it should be imposed only in extreme circumstances. *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996). Moreover, district courts should be especially hesitant to dismiss for the procedural deficiencies by a pro se litigant. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).

Here, RAC's allegations of prejudice are nonspecific. This lack of demonstrated prejudice to RAC weighs against dismissal pursuant to Rule 41(b). *Pagtalunan*, 291 F.3d at 642. Furthermore, RAC has not demonstrated a pattern of wilful misconduct on the part of the Kerwins that typically justifies dismissal, instead of a lesser sanction, pursuant to Rule 16(f). *See, e.g., Malone*, 833 F.2d at 131. Though RAC cites *Burns v. Glick*, 158 F.R.D. 354, 255 (E.D. Pa. 1994)

for the proposition that dismissal is warranted in cases like the Kerwins', the *Burns* court explicitly considered a party's *wilful* disregard of a court order. RAC, however, makes no allegation that the Kerwins' failure to comply with scheduling orders was wilful nor does RAC establish a pattern of conduct from which wilful disregard may be inferred. Since dismissal is so harsh a penalty that it is warranted only in extreme circumstances, *Dahl*, 84 F.3d at 336, dismissal here is improper.

RAC also argues this court should grant its motion to dismiss because the Kerwins did not respond to its motion to dismiss. While "[t]he failure of an opposing party to file points and authorities in response to any motion [constitutes] a consent to the granting of the motion," LR 7-2(d), the court evaluates the procedural missteps of a pro se litigant according to a liberal standard, *Lucas*, 84 F.3d at 535. Because the general policy of federal courts is to decide cases on their merits, *Pagtalunan*, 291 F.3d at 642, and the Kerwins' did in fact respond to RAC's motion for summary judgment, dismissal pursuant to LR 7-2(d) is not warranted under the present circumstances.

IT IS THEREFORE ORDERED that RAC's Motion to Dismiss or, Alternatively, Motion for Summary Judgment (#9) is hereby DENIED.

IT IS SO ORDERED.

DATED this 2nd day of June, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

13